**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BACH DIVISION**
www.flsb.uscourts.gov

IN RE:                                              CASE NO.: 11-26453-PGH
                                                    CHAPTER 11
FEIZ HOLDINGS, INC.

    Debtor.
_____/

## DISCLOSURE STATEMENT FOR FEIZ HOLDINGS, INC.

**KELLEY & FULTON, P.L.**
Attorneys for Debtor in Possession
1665 Palm Beach Lakes Blvd, Suite 1000
West Palm Beach, Florida 33401
Telephone: (561) 491-1200
Facsimile: (561) 684-3773

By: *Craig I. Kelley*
    Craig I. Kelley, Esquire
    Florida Bar No.: 782203

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| Introduction | 2 |
| I - DEFINITIONS | 4 |
| II - PRE-PETITION EVENTS CAUSING NEED FOR REORGANIZATION | 4 |
| III - POST-PETITION EVENTS | 6 |
| IV - FINANCIAL INFORMATION | 7 |
| V - VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS | 7 |
| VI - OBJECTIONS TO CLAIMS | 8 |
| VII - MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS | 8 |
| VIII - CLAIMS AND THEIR TREATMENT UNDER THE PLAN | 9 |
| IX - POST CONFIRMATION MANAGEMENT AND CONTROL OF THE DEBTOR | 12 |
| X - EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 13 |
| XI - LIQUIDATION ANALYSIS | 14 |
| XII - CONFIRMATION BY CRAMDOWN | 15 |
| XIII - FEASIBILITY AND BEST INTEREST TEST | 16 |
| XIV - RISK ANALYSIS | 16 |
| XV - MISCELLANEOUS PROVISIONS | 17 |
| XVI - CONCLUSION | 19 |
| SIGNATURE PAGE | 20 |

EXHIBITS:

    EXHIBIT "A" List of Creditors' Claims
    EXHIBIT "B" Cash Flow Projections for the Debtor
    EXHIBIT "C" DIP Summary Reports
    EXHIBIT "D" Liquidation Analysis

The Debtor in Possession, **FEIZ HOLDINGS, INC.**, submits this Disclosure Statement (hereinafter referred to as "Disclosure Statement") to its Creditors and other parties in interest.  A hearing on confirmation of the attached Plan is scheduled before the Court on _____.  The approval of the Disclosure Statement is not tantamount to a decision by the Court on the merits of the Plan.

## INTRODUCTION

This Disclosure Statement is submitted pursuant to the requirement imposed on the proponent of a Plan of Reorganization by 11 U.S.C. Section 1125.  The purpose is to disclose information deemed to be material, important, and necessary for the Creditors to arrive at a reasonably informed decision in exercising their right, or to vote for acceptance or rejection of the Plan of Reorganization (hereinafter referred to as "the Plan").  This Disclosure Statement should be read in conjunction with the accompanying Plan of Reorganization.  The Plan is a legally binding document once it is approved by the Court, and should be read in its entirety.  Accordingly, creditors may wish to consult with their own attorney, the Creditor's Committee and its counsel, to understand the Plan more fully.

On June 14, 2011, the Debtor in Possession, **FEIZ HOLDINGS, INC.**, filed a voluntary Petition for Reorganization under Chapter 11 in the United States Bankruptcy Code, 11 U.S.C., Section 101 *et seq.*, ("the Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").  **FEIZ HOLDINGS, INC.** has continued to operate the business affairs as the Debtor in Possession pursuant to Section 1108 of the Bankruptcy Code.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT WAS PREPARED BY THE DEBTOR, UNLESS SPECIFICALLY STATED

2

TO BE FROM OTHER SOURCES.  NO REPRESENTATIONS, OTHER THAN THOSE SET FORTH HEREIN, CONCERNING THE DEBTOR, PARTICULARLY AS TO FUTURE BUSINESS OPERATIONS OR VALUE OF ITS PROPERTY IS AUTHORIZED OR WARRANTED BY THE DEBTOR.  THE READER SHOULD NOT RELY ON ANY ORAL OR OUTSIDE REPRESENTATION BY ANY AGENT OF THE DEBTOR IN DECIDING TO VOTE FOR OR AGAINST THE PLAN.  ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH OTHER ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE CREDITORS' COMMITTEE AND THE UNITED STATES TRUSTEE FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

Projections or results of future operations are based on the Debtor's best estimates in light of current market conditions, past experience, analysis of general economic conditions, and other estimates which will bear on the results.

You are urged to carefully read the contents of this statement before making your decision to accept or reject the Plan.  Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they presently exist.  The terms used herein have the same meaning as in the Plan unless the context hereof requires otherwise.

Creditors may vote on the Plan by filling out and mailing the accompanying ballot form to the Bankruptcy Court.  Your ballot must be filed on or before _____, in order to be considered and counted.  As a Creditor, your vote

3

is very important.  *In order for the Plan to be accepted, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and more than ½ in number of the allowed claims of impaired classes must accept the Plan.*  You are, therefore, urged to fill in, date, sign and promptly mail the enclosed ballot which has been furnished to you.  Please be sure to properly complete the form and legibly identify the name of the Claimant or interest holder.  You are advised that the Debtor may be afforded the right under the Bankruptcy Code to have the Plan confirmed over the objections of dissenting Creditors consistent with the limitations set forth in the Bankruptcy Code, as further discussed below.

## I - DEFINITIONS

The following phrases, as used hereinafter, shall have the following meanings:

All definitions in the Plan of Reorganization are incorporated herein.

<u>Court</u> -     Shall mean the United States Bankruptcy Court or the United States District Court, whichever is appropriate, implementing the provisions of the Bankruptcy Code in these proceedings.

<u>Creditor</u> -     Shall mean the holder of an Allowed Claim.

<u>Debtor's Property</u> -     Shall mean all of the Debtor's property, as defined in Section 541 of the Bankruptcy Code.

<u>Plan</u> -     Shall mean the Chapter 11 Plan and any other subsequent amendments or modifications.

## II - PRE-PETITION EVENTS CAUSING NEED FOR REORGANIZATION

**FEIZ HOLDINGS, INC.** is a privately-held real estate holding company incorporated under the laws of the State of Florida on April 22, 2004, and headquartered in Vero Beach, Florida. **FEIZ HOLDINGS, IN C.** operates five rental real properties in Gainesville, Florida: four residential condominiums located at 1700 SW

16th Court, Units A-25, B-25, C-25 and D-30, Gainesville, Florida (hereinafter referred to as the "Condominium. Units"), and a medical office building located at 3750 NW 83rd Street, Gainesville, Florida (hereinafter referred to as the "Office Building").

The Debtor receives its only source of income from the rental proceeds from the aforementioned properties. The rental income is used to pay the Debtor's mortgages and its operating, maintenance and management expenses.

In the year of 2010, Summit House Association of Condominium Owners, Inc. (hereinafter referred to as "Summit House HOA") filed an action to recover unpaid association fees on the Condominium Units. In addition, the mortgages on the Condominium Units went into default because Summit House HOA began collecting the rents directly from the Condominium Unit tenants. Accordingly, the Debtor did not receive any rental income from the Condominium Units to meet its monthly debt service obligation relative to said units. The secured creditor, RBC Bank, Successor in Interest to Millennium Bank (hereinafter referred to as "RBC Bank"), filed foreclosure lawsuits on the four Condominium Units.

The Debtor was unable to find to a workable resolution with regard to the foreclosure lawsuits with RBC Bank and Summit House HOA. Unable to pay the mortgages, the Debtor sought protection under the Bankruptcy Code and filed the instant Chapter 11 case.

### III - POST-PETITION EVENTS

The purpose of the current bankruptcy filing was to value and modify the current mortgages on all the Condominium Units and the Office Building. To that effect, in the course of current Chapter 11 proceeding, Debtor filed Motions to Value and Determine

5

Secured Status with regard to the mortgages on the Condominium Units and the Office Building. The Debtor was successful its Motions with regard to the Condominium Units by bringing the values down to current market value. Despite its success, the Debtor subsequently decided to surrender the Condominium Units because they have remained vacant and assessments to the Association continued to accrue. The Debtor has successfully negotiated a resolution with Summit House HOA by which the Debtor will execute quit claim deeds conveying the Condominium Units to Summit House HOA in full and final satisfaction of any pre-petition and post-petition claims Summit House HOA may have against the Debtor and subject to any claims of third parties and without any warranties and representations as to title.

The Debtor's Motion to Value and Determine Secured Status with regard to the Office Building remains pending. The Debtor is currently working with counsel for TD Bank in a cooperative fashion regarding the valuation issue on the Office Building mortgaged by Mercantile Bank n/k/a TD Bank. The goal is to consolidate the three mortgages on the property into a single mortgage with a fixed rate of interest. The Debtor and TD Bank have been in constant negotiations to attain a mortgage modification that is beneficial and fair to both parties and the Debtor has agreed to the most recent terms offered by TD bank, as set forth below.

## IV - FINANCIAL INFORMATION

The source of the financial information for this Disclosure Statement and accompanying Plan is from reports and financial statements of the Debtor, Debtor in Possession Reports, and the Debtor's accountants and agents. The aforementioned information has not been audited. Except for the financial statements and projections attached hereto, the remainder of the documents relied upon are too numerous to

attach, and are available for inspection upon request at a mutually convenient date and time. The Debtor presently operates on a cash accounting method and operates on a fiscal year ending December 31st.

## V - VOIDABLE TRANSFERS AND PREFERENCE ANALYSIS

There are currently no known or existing voidable transfers that the Debtor has been a party to within the one year prior to Bankruptcy. Any other payments made during the preference period were made in the ordinary course of the Debtor's business operations. The financial statements and Debtor in Possession reports reflect and confirm that the Debtor has not had any substantial income in the year prior to filing Bankruptcy from which any further voidable transfers or preference claims could have been made to insiders claims within the ninety days prior to the Bankruptcy filing. In fact, there are no known "insider" or "affiliate" claims, as those terms are defined in the Bankruptcy Code, and no such material transactions have occurred post-petition, nor are any contemplated post-confirmation.

## VI - OBJECTIONS TO CLAIMS

Pursuant to the Plan, the Debtor may object to any scheduled claim or Proof of Claim filed against the Debtor. Such an objection shall preclude the consideration of any claim as "allowed" for the purposes of timely distribution in accordance with the Plan. Any objections by the Debtor have been, or will be, filed with the Bankruptcy Court under separate pleading. The Debtor is presently reviewing the Proofs of Claims that have been filed to determine the propriety of filing claims objections. A list of all creditors and claims is attached hereto and made a part hereof as Exhibit "A".

## VII - MEANS OF EFFECTUATING PLAN AND RISK ANALYSIS

The Debtor believes that the Plan of Reorganization provides the best value for the creditors' claims and is in their best interest. Attached hereto as **Exhibit "A"**, is the list of creditors showing the claims against the Debtor in each classification. The Projections of future cash flow attached as **Exhibit "B"** establish the ability of the Debtor to fund the Plan. The Projections were prepared by the Debtor, which relied upon and incorporated data from past tax records, profit and loss statements, the Court approved cash collateral Budget and the monthly Debtor in Possession reports filed by **FEIZ HOLDINGS, INC.** from June, 2011 through the present. The Projections confirm the ability of the Debtor to once again generate the realistic revenues set forth in the Projections.

The Debtor believes that the risk of non-payment of the percentage distribution to the unsecured creditors in the Chapter 11 is greatly outweighed by the more substantial risk of non-payment should this Bankruptcy be converted to a Chapter 7 Liquidation, wherein the unsecured creditors would receive a distribution of **0%**, as more fully set forth in the Liquidation Analysis attached hereto and made a part hereof as **Exhibit "D"**.

The allowed administrative expenses incurred by the estate are not overly substantial and the timing of this procedure will allow sufficient capital to be available to properly fund the Plan payments upon confirmation. The attached Liquidation Analysis and the Projections set forth the amounts of the administrative claims and means to repay them at confirmation, or thereafter.

### VIII - CLAIMS AND THEIR TREATMENT UNDER THE PLAN:

A. ***Administrative Claims:*** The administrative claimants include the Debtor's attorney , Accountant and accrued fees to the U.S. Trustee. Payment of the administrative claims is subject to set off for retainers, as well as approval by the Court

of very detailed fee applications. The scheduling Order for Confirmation will set forth a deadline for the filing of all administrative claims, which will be paid on the effective date (which is defined as 30 days after confirmation), unless other payment arrangements are reached between the Debtor and the claimant. Additional administrative claims include the Clerk of the Court (no known claim).

B.   ***Other Claims:***

**1. Class One**

TD Bank, as successor in interest to Mercantile Bank, holds three mortgages on the Office Building located at 3750 NW 83rd Street, Gainesville, Florida. The first mortgage has a balance of **$345,148.36**. The second mortgage has a balance of **$138,637.10** and a third mortgage has a balance of **$224,991.26**. The total of these three mortgages due to RBC Bank is $708,776.72. The Debtor proposes to value the Office Building at the agreed upon appraised amount of $610,000 and allow TD Bank a secured claim of $610,000.00 amortized over twenty five (25) years at 5.0% interest with a monthly payment of $3,565.98.00 per month. The remaining balance shall be treated as a general unsecured claim pursuant to the treatment afforded general unsecured creditors in Class Seven.

**2. Class Two**

RBC Bank's mortgage on property located at 1700 SW 16th Court, Unit A-25, Gainesville, Florida is secured by a mortgage. The Debtor will surrender in full satisfaction of the loan. The mortgage of RBC Bank will run with the land and the transfer to Summit House HOA will be subject to the mortgage of RBC Bank.

**3. Class Three**

RBC Bank's mortgage on property located at 1700 SW 16th Court, Unit B-25, Gainesville, Florida is secured by a mortgage. The Debtor will surrender in full

satisfaction of the loan. The mortgage of RBC Bank will run with the land and the transfer to Summit House HOA will be subject to the mortgage of RBC Bank.

### 4. Class Four

RBC Bank's mortgage on property located at 1700 SW 16th Court, Unit C-25, Gainesville, Florida is secured by a mortgage. The Debtor will surrender in full satisfaction of the loan. The mortgage of RBC Bank will run with the land and the transfer to Summit House HOA will be subject to the mortgage of RBC Bank.

### 7. Class Five

RBC Bank's mortgage on property located at 1700 SW 16th Court, Unit D-30, Gainesville, Florida is secured by a mortgage. The Debtor will surrender in full satisfaction of the loan. The mortgage of RBC Bank will run with the land and the transfer to Summit House HOA will be subject to the mortgage of RBC Bank.

### 8. Class Six

Summit House HOA ("Summit House") is a secured creditor by way of a blanket judgment lien on the Condominium Units. The Debtor will surrender the Condominium Units to Summit House HOA in full satisfaction of all pre-petition and post-petition claims of Summit House HOA subject to any claims of third parties with respect to the Condominium Units. Title to the Condominium Units will pass to Summit House by way of Quit Claim Deeds without any warranties and representations as to title, and subject to all mortgages and taxes thereon. Summit House HOA will have no claims in this estate upon transfer of the Condominium Units.

### 10. Class Seven – General Unsecured Creditors:

Class Seven includes all other allowed claims of unsecured creditors, subject to any Objections that are filed and sustained by the Court. The Plan is proposed as a "pot plan" (meaning that a set amount will be distributed to the unsecured creditors based on net cash flow as set forth in the Projections attached to the Disclosure Statement). To the extent that the Debtor is successful in any or all of the proposed Objections, then the dividend and distribution to each individual creditor will be adjusted accordingly. A pro rata distribution to all creditors holding allowed unsecured claims based shall be based on a fixed aggregate sum and will be paid over five years on a monthly basis that will begin on the Effective Date of the Plan. The exact pro rata dividend to this class of creditors will be determined after any and all Objections are resolved or determined by the Court. However, the monthly payment to this class based upon the cash flow projections will be **$200.00** per month for a period of sixty (60) months.

**10. Class Eight – Equity Claim:**

Class Eight consist of the claim of the sole shareholder of the Debtor Hamid R. Feiz, who shall receive no distribution from the estate.

**IX - POST-CONFIRMATION MANAGEMENT AND CONTROL OF THE DEBTOR**

**FEIZ HOLDINGS, INC.** is a Florida corporation owned by Hamid Feiz and Maria Feiz. The reorganized corporate entity will be structured as follows:

> HAMID FEIZ – Director and President
> MARIA FEIZ – Director and Secretary

The management of the Debtor will remain the same in the capable hands of Hamid Feiz.

**X - EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Debtor assumes following Executory Contracts and Unexpired Leases:

- Tenant Lease on Medical Office Building located at 3750 NW 83rd Street, Gainesville, Florida - North Florida Immediate Care Center, successor by assignment to North Florida Immediate Care Center – Spring Hill, LLC. Ten years lease entered into on December 1, 2005.  The current tenant is in its seventh year of 10 year lease and the Debtor has every indication that the tenant intends to renew its lease by exercising an option or entering into a new lease.

The aforementioned lease agreement will be assumed as of its Effective Date of the Plan of Reorganization.  The corporate Debtor assigns the rights, title and interest to this Unexpired Lease to the reorganized Debtor within the terms of the proposed Plan.

Further, the Debtor has rejected following Executory Contracts and Unexpired Leases:

- Residential Rental Agreement on property located on 1700 SW 16th Court, Apt. A-25, Gainesville, Florida with tenant, John George.

- Residential Rental Agreement on property located on 1700 SW 16th Court, Apt. B-25, Gainesville, Florida with tenant, Robert A. Taylor.

- Residential Rental Agreement on property located on 1700 SW 16th Court, Apt. C-25, Gainesville, Florida with tenant, Amie Bethancourt.

- Residential Rental Agreement on property located on 1700 SW 16th Court, Apt. D-30, Gainesville, Florida with tenant, Jacquelyn Peavy.

Any and all Executory Contracts or Unexpired Leases not expressly assumed within the proposed Plan, or not assumed prior to the Confirmation Date, shall be rejected.  Any claim for a rejected contract or lease shall be paid as a General Unsecured Claim by agreement, or upon determination by the Court, to the extent that such claims are timely filed and allowed.

## XI - LIQUIDATION ANALYSIS

As with any Plan, an alternative would be a conversion of the Chapter 11 case to

a Chapter 7 case, and subsequent liquidation of the Debtor by a duly appointed or elected Trustee.  In the event of a liquidation under Chapter 7, an additional tier of administrative expenses entitled to priority over general Unsecured Claims under Section 507(a)(1) of the Bankruptcy Code would be incurred.  Such administrative expenses would include Trustee's commissions and fees to the Trustee's attorney, accountant, and other professionals likely to be retained for the purposes of liquidating the assets of the Debtor.  Further claims would be asserted against the Debtor with respect to such matters as taxes associated with the sale of the assets, and the inability of the Debtor to fulfill outstanding contractual commitments and other related claims.  A Liquidation Analysis is attached hereto as **EXHIBIT "D"**.

In Chapter 7 liquidation, the secured assets of the Debtor (the Condominium Units and the Office Building) would be surrendered to the respective secured creditors, RBC Bank and TD Bank.  Due to the fact that the Condominium Units and Office Building have values significantly less than the mortgages thereon, there would be no equity available to be liquidated for the benefit of unsecured creditors with regard to these assets.  The Debtor's remaining assets that would be available to the Chapter 7 Trustee for liquidation is minimal or none at all.

Predicated upon the foregoing and under a comparison of Chapter 11 reorganization versus Chapter 7 liquidation, the Debtor believes that the Creditors will receive substantially more money under a Chapter 11 Plan than they would under a Chapter 7 proceeding.  As evidenced by the Liquidation Analysis attached hereto as **Exhibit "D"**, the Debtor's net assets are insufficient to satisfy the secured claims of the Debtor and there would be no funds available to the general unsecured creditors in the unfortunate event of a conversion to a Chapter 7 Liquidation proceeding.

The Court has previously set June 16, 2011 in this case as the claims bar date. All indebtedness scheduled by the Debtor as not disputed, contingent or unliquidated or any indebtedness set forth in a properly executed and timely filed Proof of Claim shall be deemed an allowed claim unless the same is objected to, and the objection thereto is sustained by the Court.

## XII - CONFIRMATION BY CRAMDOWN

The Debtor reserves the right, in the event that impaired classes reject the Plan of Reorganization, or any amendments or modifications thereto, to seek confirmation of the Plan pursuant to 11 U.S.C. Section 1129(b), if the Court finds at a hearing on confirmation that the Plan does not discriminate unfairly and is fair and equitable with respect to each dissenting class. According to the "absolute priority rule", if an impaired non-accepting class of creditors is not paid in full, then no junior class of claims or interests may receive or retain any property under the Plan on account of such claim or interest. An exception to the aforementioned rule may exist if equity contributes new value to the Debtor in money or monies kind. Furthermore, in order for the Plan to be confirmed, of the ballots or votes cast, Creditors that hold at least 2/3's in amount and more than ½ in number of the allowed claims of impaired classes must accept the Plan.

## XIII - FEASIBILITY AND BEST INTEREST TEST

The Debtor submits that the Plan is fair and reasonable in its treatment of the respective classes of claims in this case, and that it is in the best interests of all affected parties to approve the Plan's treatment of the classes of claims. The Projections attached to this Disclosure Statement as **Exhibit "B"** reflect and evidence a conservative analysis of the Debtor's future revenues and expenses based upon historical and present data, which support the distributions proposed within the Plan of

Reorganization.  **CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO READ AND REVIEW THE FULL TEXT OF THE PLAN OF REORGANIZATION, AND ANY AMENDMENTS OR MODIFICATIONS THERETO, PRIOR TO VOTING ON WHETHER TO ACCEPT OR REJECT THE PLAN.**

## XIV - RISK ANALYSIS

As with any investment, there are risks associated with all Plans of Reorganization, and this matter is no exception.  **FEIZ HOLDINGS, INC.** has initiated a reorganization process, which it expects to significantly improve the situation that forced it to file for Chapter 11 protection.  The Debtor has surrendered the Condominium Units and now only retains ownership of the Office Building.  The Office Building is currently occupied by North Florida Immediate Care Center.  The Office Building has been consistently producing positive rental income.  The current tenant is in its seventh year of 10 year lease and the Debtor has every indication that the tenant intends to renew its lease by exercising an option or entering into a new lease.

**FEIZ HOLDINGS, INC.** is well poised for a successful reorganization after having downsized and refocused its efforts towards a more stable source of rental income.

There is always the risk that the Debtor may not perform as forecasted, but the Debtor and its management team believe that the Projections for the future are conservative and reasonable.

## XV - MISCELLANEOUS PROVISIONS

A.  Notwithstanding any other provisions of the Plan of Reorganization, and any amendments or modifications thereto, any claim which is scheduled as disputed, contingent, or unliquidated, or which is objected in whole or in part on or before the date

15

for distribution on account of such claim, shall not be paid in accordance with the provisions of the Plan of Reorganization until such claim has become Allowed Claim by a final Order. If allowed, the Claim shall be paid on the same terms as if there has been no dispute.

      B.    At any time <u>before</u> the confirmation date, the Debtor may modify the Plan so long as the Plan as modified meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code. After the Debtor files a modification with the Bankruptcy Court, the Plan, as modified, shall become the final Plan of Reorganization.

      C.    At any time <u>after</u> the confirmation date, and before substantial confirmation of the Plan, and any amendments or modifications thereto, the Debtor or the reorganized Debtor may modify the Plan so long as the Plan, as modified, meets the requirements of Sections 1122, 1123 and 1127 of the Bankruptcy Code. The Plan, as modified under this paragraph, shall become the final Plan of Reorganization subject to and upon approval by the Court.

      D.    After the confirmation date, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially and adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in the final Plan of Reorganization or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of the final Plan of Reorganization.

      E.    Except as otherwise provided in the accompanying Plan, confirmation of the Plan shall be deemed to have discharged the Debtor pursuant to Section 1141(d)(1) of the Code, and the principals of the Debtor, from any claim included in this proceeding that arose on or prior to the Confirmation Date, and any claim of a kind specified in Section 502(g), (h) or (I) of the Bankruptcy Code whether or not: (i) a proof of the claim

is filed or deemed to be filed under Sections 501 and 1111(a) of the Bankruptcy Code; (ii) such claim is allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such claim has accepted the Plan. The payments to be made pursuant to this Plan by the Debtor, and its principals that have provided post-petition new value contributions and will continue to do so as set forth above and as necessary to fund operations and pay administrative claims on the Effective Date, shall be in full settlement and satisfaction of all claims against the Debtor and the principals of the Debtor.

F. <u>Quarterly Trustee Fees</u> - The Debtor is current in the payment of all quarterly fees to the U.S. Trustee to date. Pursuant to 28 U.S.C. Section 1930(a)(6), the Debtor shall pay to the U.S. Trustee's office all appropriate quarterly fees based upon post-petition disbursements until this case is closed by the entry of a final decree on the confirmed Plan.

## XVI - CONCLUSION

Under the Debtor's Plan of Reorganization, and any amendments or modifications thereto, all claimants of the Debtor will participate in some manner in the distribution to be made thereunder. The Debtor believes that the distributions contemplated in its Plan are fair and afford all Claimants and interest holders equitable treatment. Accordingly, the Debtor recommends that all claimants vote to **Accept** the Plan of Reorganization.

This Disclosure Statement has been executed this \_\_1\_\_ day of May, 2013.

**FEIZ HOLDINGS, INC.**
**Debtor in Possession**

By: _____
       Hamid Feiz, Director

KELLEY & FULTON, P.L.
Attorneys for Debtor in Possession
1665 Palm Beach Lakes Blvd.
The Forum - Suite 1000
West Palm Beach, FL 33401
Tel.: (561) 491-1200
Fax: (561) 684-3773


By: */s/ Craig I. Kelley*
       CRAIG I. KELLEY, ESQUIRE
       Florida Bar No.: 782203